ARIEL MENDONES
2416 W Tennyson Rd Apt 298
Hayward, CA 94545
Tel.: (510)470-1563
Email: mendonesa8@gmail.com

MARIDOL MENDONES
1800 Threlkel St.,
Reno, NV 89512
Tel.: (510)502-2398
Email: mcruz_tx_usa@yahoo.com

*Petitioners, In Pro Se*

FILED
FEB 10 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

NW

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*<br>v.<br>ARIEL MENDONES<br>MARIDOL MENDONES,<br>*Defendants*<br>In Re: SERVED TO YAHOO AND GOOGLE A SEARCH WARRANT TO SEARCH AND SEIZE PROPERTIES FOR ALL RECORDS ASSOCIATED WITH THE FOLLOWING ACCOUNTS:<br>MCRUZ_TX_USA@YAHOO.COM<br>AKASWAKI@YAHOO.COM<br>MENDONESA8@GMAIL.COM | CASE NUMBER: CR 26-90193 MISC<br>WARRANT NO.: 2025_9275 ~~KAW~~<br>**DEFENDANTS, ARIEL AND MARIDOL MENDONES' NOTICE OF PETITION AND MOTION FOR *FRANKS HEARING*, TO QUASH, TO SUPPRESS EVIDENCE IN REGARD TO ISSUED SEARCH WARRANT AND DISMISS THE CASE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (Pen. Code, $ 1546.a(c); Pen. Code § 1538.5)**<br>**MOTION FOR EVIDENTIARY AND FRANKS HEARING PURSUANT TO FOURTH AMENDMENT**<br>**Date:** To be set by the Court<br>**Time:** To be set by the Court<br>**Dept:** To be set by the Court<br>[Affidavit of Witness, Barbara Clark, Order From Judge Victoria Kolakowski, Affidavit from Forensic Video Expert, and Anthony Nelson filed and served concurrently herewith] |

# NOTICE OF PETITION AND MOTION FOR *FRANKS HEARING*, TO QUASH, TO SUPPRESS EVIDENCE IN REGARD TO ISSUED SEARCH WARRANT AND DISMISS THE CASE

TO THE UNITED STATES DISTRICT ATTORNEY'S OFFICE AND TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that, on the above listed date or as soon thereafter as the matter may be heard, Defendants, ARIEL MENDONES and MARIDOL MENDONES will, and hereby does, (1) move this Court for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) and Fourth Amendment, (2) move this Court to quash the issued search warrant for their yahoo and google accounts that was issued on November 24, 2025 and executed by Special Agent of the California Department of Justice named Hiram Duncan, (3) to suppress the evidence[s], which they believe to have been issued under search warrant number 2025_9275, order the destruction of all seized information, (4) to order the return of their seized properties account information, (5) Users of these accounts are not properly served suppresses the evidence seized leading for dismissal under Cal. Pen. Code § 1538.5 and (*People v. Hobbs*, 7 Cal.4th 948, 873 P.2d 1246, 30 Cal.Rptr.2d 651 (Cal. 1994)), (6) notice of removal to federal court on grounds of diversity jurisdiction and subject matter jurisdiction for Franks hearing motion, and any other applicable law, on the grounds that the issued search warrant of their yahoo and google accounts are not based on probable cause, overly broad, and the officer's affidavit included intentional or reckless false statements or omitted material facts, in which the search warrant must have not been issued in the first place.

Defendants seek the relief requested pursuant to the California Electronic Communications Privacy Act (CalECPA), Penal Code, $ 1546.a(c) and Penal Code § 1538.5 authorizes Petitioners "whose information is targeted by a warrant . . . that is inconsistent with [CalECPA], or the California Constitution or the United States Constitution"- to "petition the issuing court to void the warrant, order, or process, or to order the destruction of any information obtained in violation of [CalECPA], or the California Constitution, or the United States Constitution." In exercising their statutory rights under Section 1546.4, Petitioners aver that the search warrant for their yahoo and google accounts is overbroad in violation of

CalECPA, the Fifth and Fourth Amendments, and the California Constitution. Petitioners' request for the return of these accounts is made pursuant to non-statutory rights recognized in (*Gershenhorn v. Superior Court, Los Angeles County* (1964) 227 Cal.App.2d36l); (See also *Ersoniq Corp. v. Superior Court* (1998) 65 Cal.App.4th 1537.)

This Petition is based on this Notice of Petition and Motion to Quash and Suppress Evidence; the Memorandum of Points and Authorities herein; and the supporting Exhibits and Declarations of Ariel Mendones and Maridol Mendones filed concurrently herewith; Affidavit of Witness, Barbara Clark, Order from Judge Victoria Kolakowski, and Affidavit from Forensic Video Expert, Anthony Nelson filed and served concurrently herewith as well as any further argument or authorities that may be requested or permitted by the Court. Users of these accounts are not properly served suppresses the evidence seized leading for dismissal under Cal. Pen. Code § 1538.5 and (*People v. Hobbs*, 7 Cal.4th 948, 873 P.2d 1246, 30 Cal.Rptr.2d 651 (Cal. 1994))

Dated: February 08, 2026

Respectfully submitted,

ARIEL MENDONES
*Petitioner, In Pro Se*
2416 W Tennyson Rd #298
Hayward, CA 94545

MARIDOL MENDONES
*Petitioner, In Pro Se*
1800 Threlkel St.
Reno, NV 89512
Tel.: (510)502-2398

////////

## TABLE OF CONTENTS

Page[s]

MEMORANDUM OF POINTS AND AUTHORITIES ..... 10

I. PRELIMINARY STATEMENT ..... 10

II. STATEMENT OF RELEVANT FACTS ..... 12

A. Case Background ..... 12

B. Judge Kolakowski Admitted That Her Findings Were Based Solely on Suspicion. ..... 13

C. Mendones Sought Private Investigator to Locate the Witnesses. ..... 14

D. Mendones Filed a Protective Motion Against Cushman & Wakefield ..... 14

E. Judge Kolakowski's No Order of Referral to District Attorney in Regard to Mendones' Case ..... 14

F. Cushman & Wakefield's Contempt on Judge Kolakowski's Order. ..... 15

III. ARGUMENT ..... 16

A. Governing Law ..... 16

1. The affiant deliberately omitted material information or made statements with reckless disregard for the truth. ..... 16

2. The Affidavit Does Not Support A Finding Of Probable Cause. ..... 18

B. No Delayed Notification Order From the Search Warrant Judge. ..... 21

C. Overbroad Scope of Search Authorized by Warrant ..... 22

D. CalECPA Provides Robust and Mandatory Protections Were, As Here, Digital Privacy Is At Stake ..... 25

1. Heightened Particularity Requirement ..... 25
2. Explicit Remedies for any Violation ..... 27
3. Suppress Any Electronic Information in Violation of the Fourth Amendment of the United States Constitution or of CalECPA. ..... 27, 28

E. The Warrant is Overbroad in Violation of CalECPA, the Fourth Amendment, the First Amendment, and the California Constitution ..... 28

1. The Warrant Fails to Satisfy CalECPA's and the Fourth Amendment's Particularity Requirements ..... 28

2. The Search Warrant is Overbroad in Violation of Petitioners' First and Fourth Amendment Rights ..... 30

F. The Search Warrant Should be Quashed. ..... 31

## TABLE OF CONTENTS
**(Cont'd)**

**Page[s]**

G. The Court Must Hold a Franks Evidentiary Hearing. .......... 31

H. The Court Must Order to Affiant to Produce Evidence to Traverse the Veracity of an Affidavit Supporting a Search Warrant. .......... 32

I. The Court Should Order the Return of Defendants' Seized Properties in Yahoo and Google .......... 33

IV. CONCLUSION .......... 34

DECLARATION .......... 35

PROOF OF SERVICE .......... 36

////////

# TABLE OF AUTHORITIES

**Page[s]**

## Statutes


§ 1546, subd. (a) .......... 20

§ 1546, subd. (g) .......... 25

§ 1546.1, .......... 28

§ 1546.1, subd. (a)(1)(3) .......... 25

§ 1546.1, subd. (d)(1) .......... 26

Cal. Pen. Code § 1538.5 .......... 2

CalECPA Section 1546.2, subdivision (a)(l ). .......... 21

California Penal Code § 1538.5 .......... 21

California Penal Code Sections 1525, 1523 .......... 24

CCP §§ 473(b), 663 and 657 .......... 13

Communications Privacy Act (CalECPA) .......... 2

felony related to crime(s) of 182, 132, 118a, 530.5(a) of the California Penal Code .......... 7

PC §1524 .......... 18

Pen. Code, § 1546, subd. (d) .......... 25

Pen. Code, § 1546.1, subd. (d)(l) .......... 29

Pen. Code, § 1546.4, subd.(c) .......... 27

Pen. Code, §§ 1546.1(d)(2), (e)(2), l546.4(c), 1538.5 .......... 35

Penal .......... 21

Penal Code § 1546.2(b)(1) .......... 15

Penal Code §1531 .......... 21

Penal Code, $ 1546.a(c) .......... 2

Section 1546.2, subdivision (a)(l ) .......... 20

Section 1546.4, subdivision ( c ) .......... 28

Section 1546.4, subdivision (a) .......... 28

section 1546.4, subdivision (c) .......... 28

## TABLE OF AUTHORITIES
(Cont'd)

**Page[s]**

### Statutes

section I525 ....................16

### Other Authorities

Canon 3 of the Judicial Code of Conduct ....................11

### State Cases

*People v. Aldridge* (1984) 35 Cal. 3d 473 [198 Cal. Rptr. 538, 674 P.2d 240 ....................12
*Aday v. Superior Court* (l961) 55 Cal.2d 789, 796. ....................26
*DiMaggio v. Superior Court* (2024) 104 Cal. App. 5th 875, 887 ....................29
*Ensoniq*, 65 Cal.App.4th at p. 1537 ....................34
*Ersoniq Corp. v. Superior Court* (1998) 65 Cal.App.4th 1537 ....................3
*Flack v. Municipal Court* (1967) ....................24
*Franklin v. Municipal Court* (1972) 26 Cal. App. 3d 884, 896 ....................34
*Gershenhorn v. Superior Court, Los Angeles County* (1964) 227 Cal.App.2d36l ....................3
*Gersherhorn v. Superior Court, Los Angeles County* (1964) 227 Cal. App. 2d 361 ....................34
*Lance W.* (1985) 37 Cal.3d 873,879 ....................28
*People v. Appleton* (2016) 245 Cal.App.4th 7l7, 725 ....................26
*People v. Benjamin*, 77 Cal. App. 4th 264, 271-72 (1999) ....................14
*People v. Broome* (1988), 201 Cal.App.3d 1480 ....................2, 33
*People v. Dawes*, No. D081586 (Cal. Ct. App. Jan. 31, 2024) ....................24
*People v. Hobbs*, 7 Cal.4th 948, 873 P.2d 1246, 30 Cal.Rptr.2d 651 (Cal. 1994) ....................2, 3, 22
*People v. Huston*, 210 Cal. App. 3d 192, 219 (1989) ....................14
*People v. Lamonte* (1997) 53 Cal.App.4th 544, 549 ....................35
*People v. Luttenberger*, 50 Cal.3d1(1990) ....................9
*People v. Manis*, 268 Cal. App. 2d 653, 74 Cal. Rptr. 423 (Cal. Ct. App. 1969) ....................18
*People v. Meza* (2023) 90 Cal. App. 5th 520 ....................30
*People v. Meza* (2023), 90 Cal. App. 5th 520 ....................21

**TABLE OF AUTHORITIES**
**(Cont'd)**

**Page[s]**

**State Cases**

*People v. Pressey* (2002) 102 Cal.App.4th 1178, 1185 ........................................................ 19

*People v. Sandlin*, 230 Cal. App. 3d 1310, 1316 (1991) ........................................................ 14

*People v. Sandlin*, 230 Cal. App. 3d 1310, 1317 (1991) ........................................................ 9

*People v. Scott*, 52 Cal. 4th 452, 484 (2011) ........................................................ 14

*People v. Simon*, 45 Cal.2d 645, 290 P.2d 531 (Cal. 1955)........................................................ 18

*Petros v. Duncan et al*, No. 1:2019cv00277 - Document 43 (E.D. Cal. 2021 ........................... 8

*Price v. Superior Court* (2023) 93 Cal. App. 5th 13, 58, 310 Cal.Rptr.3d 520 ........................ 21

*Riley v. California* (2014) 573 U.S. 373, 396 ........................................................ 25

*Saunders v. Superior Court* (2017) 12 Cal.App.5th Supp. 1, 2213 ........................................ 27

*United States v. Leon*, 468 U.S. 897 (1984)........................................................ 24

**Federal Cases**

*Barratt v. Cushman & Wakefield* in N.J., INC. View Case. 144 N.J. 120 (1996). 675 A.2d 1094........................................................ 8

*Brinegar v. United States* (1949) 338 U.S. 160, 176 ........................................................ 16

*Carpenter v. United States* (2018) 585 U.S. 296 ........................................................ 26

*Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969).................. 22, 24

*Coolidge v. New Hampshire* (1971) 403 U.S. 443, 467 ........................................................ 29

*Elkins v. United States* (1960) 354 U.S. 206, 217........................................................ 27

*Florida v. Royer* (1983) 460 U.S. 491, 498 [75 L. Ed. 2d 229, 236-237, 103 S. Ct. 1319....... 11

*Florida v. Royer* (1983) 460 U.S. 491, 498 [75 L. Ed. 2d 229, 236-237, 103 S. Ct. 1319] ..... 11

*Franks v. Delaware*, 438 U.S. 154 (1978)........................................................ 2

*Illinois v. Gates* (1983) 462 U.S. 213, 233, 238. ........................................................ 17

*Illinois v. Gates* (1983) 462 U.S. 213, 233, 238.) "Sufficient information must be presented to the magistrate to allow that official to determine ........................................................ 17

*Millender v. County of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010)........................................ 24

*People of the State of New York v. Donald J. Trump, et al.*, with the Index Number

## TABLE OF AUTHORITIES
## (Cont'd)

**Page[s]**

**Federal Cases**


452564/2022 ....................14

*People v. Brueckner* (1990) 223 Cal.App.3d 1500, 1504 ....................17

*Riley v. California* (2014) 573 U.S. 373,396,403 ....................17

*Terry v. Ohio*, supra, 392 U.S. 1 ....................11

*Texas v. Brown* (1983) 460 ....................16

*U.S. v. Cardwell* (9th Cir. 1982) 680 F. 2d 75, 78 ....................29

*U.S. v. Ventresca* (1965) 380 U.S. 102, 108 ....................17

*U.S. v. Ventresca*, supra. 380 U.S. at p. 108 ....................19

*United States v. Cardwel*, (9th Cir. 1982) 680 F.2d 75,77-78 ....................31

*United States v. Castellanos*, 820 F. Supp. 80 (S.D.N.Y. 1993) ....................15

*United States v. Clark* (9th Cir. 1994) 31 F.3d 831, 836 ....................31

*United States v. Kow* (9th Cir. 1995) 58 F. 3d 423,427 ....................29

*United States v. McCall* (11th Cir. 2023) 84 F.4th 1317,1328 ....................30

*United States v. Schesso* (9th Cir. 2013) 730 F.3d 1040 ....................30


**Constitutions**


Cal. Const., art. 1, § 13 ....................16

Cal. Const., art. I, § 28, subd.(f)(l) ....................28

Fourth Amendment ....................21

Title 21 U.S.C. § 841(a)(1) ....................31


//////////

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

On November 24, 2025, the Alameda Superior Court issued a search warrant of yahoo and google accounts by Hiram Duncan, a special agent of the California Department of Justice. It includes seizure of property or things for alleged used in commission of a felony related to crime(s) of 182, 132, 118a, 530.5(a) of the California Penal Code to wit: Conspiracy ,Presenting forged evidence in legal trials or proceedings, Swearing false statements in affidavits to mislead legal proceedings, Using another's personal information for unlawful purposes, without a delayed notification order to the target individuals.

On January 13, 2026, the Yahoo Legal Team notified both users of the served search warrant in reference to yahoo accounts. On January 20, 2026, the Defendants submitted a notice motion to quash and suppress the issued search warrant. The Defendants learned in Alameda Superior Court, criminal division that the issued search warrant was in connection to civil case under Mendones, et al v. Cushman and Wakefield, Inc., et al pending appeal at the California Courts of Appeal, Case number: A175443.

The affiant failed to disclose to the issuance judge that Defendants had prior protective motion pending appeal against the opposing party, the Cushman and Wakefield, Inc. ("CAW") for discovery abuse, threat and harassment. [Exh_1] The affiant, Hiram Duncan known for civil rights complaint against him. ( *Petros v. Duncan et al*, No. 1:2019cv00277 - Document 43 (E.D. Cal. 2021) case opinion from the Eastern District of California US Federal District Court) Whereas, the CAW is known for contempt of court in reference to disobedience in judge's ruling. A New York judge held the firm in contempt and fined it $10,000 per day for failing to comply with subpoenas in an investigation into the Trump Organization's business practices. The investigation centered on whether the firm provided fraudulent or misleading appraisals to help the Trump Organization secure favorable loans. The U.S. Department of Justice added Cushman & Wakefield to a lawsuit against RealPage, Inc. in January 2025, accusing the firm of conspiring with landlords to artificially inflate rental prices through algorithmic collusion.

The Court's findings ruled CAW for unethical practices, (*Barratt v. Cushman & Wakefield* in N.J., INC. View Case. 144 N.J. 120 (1996). 675 A.2d 1094) and many others.

Both affiant and informant intentionally omitted information the judge should have been able to consider prior to the issuance of the search warrant. The affidavit is riddled with inaccuracies. The informant who is known for alleged fraudulent activities, dishonesty, contempt of court and unethical practices, credibility—or lack thereof—is squarely at issue here. The investigator and informant made repeated misrepresentations (or omissions) to the judge with respect to the truthfulness of the submitted materials.

The Mendones' should be granted an evidentiary hearing to further explore the credibility of the affiant upon which the prosecution's search warrant completely rests. An application for a Franks hearing "must challenge the truthfulness of the affiant ...." (*People v. Sandlin*, 230 Cal. App. 3d 1310, 1317 (1991)) Investigator Duncan personally conducted the investigation into the alleged commission of felony of the Defendants and the judge adopted wholly his report and issued a search warrant and seizure of the Defendants' yahoo and google accounts. The information the affiant relied to was based merely on CAW's reports with whom the ones constantly harass and intimidate the Defendants up to the point, Defendants filed a motion for protective order that's unfortunately unable to be decided by the judge that brought it to appeal for relief instead. See [Exh_2] The source of the material the affiant presented which originated from CAW certainly has purposefully misrepresented the truth about those facts and a proper justification for a *Franks* hearing.[1]

[1] The material presented by the law enforcement officer is based on the findings and order at alameda superior court judge Victoria Kolakowski, who already made an order stated, "***The Court finds that referral for criminal prosecution is <u>not</u> appropriate***". See, [Exh_7_p16] In addition, [2] witness-Barbara Clark admitted in her affidavit that her granddaughter distorted

[1] In the alternative, the Defendants respectfully request that this Court consider this Motion as a request for an evidentiary hearing pursuant to the principles announced in *People v. Luttenberger*, 50 Cal.3d1(1990), as the evidence provided in this Motion demonstrates (1) inconsistencies in the affiant's statements and (2) reason to believe that the affiant withheld critical information from the judge.

their videos with the use of synchro-vax, ***not* artificial intelligence**. [Exh_3] Then, [3] the forensic video expert named Anthony Nelson, made an affidavit that by utilizing methodological tools, upon his examination of the metadata on the evidentiary materials, even though shows some editing, but indeed shows ***no* findings of any artificial intelligence nor commission of any crime** on the videos Defendants prior submission. See [Exh_4] Then, [4] Defendants provided the court the metadata of all evidentiary materials from the original physical evidence, and ***none* shows a product of artificial intelligence neither any act of crime**. [Exh_9] By these evidence[s], this Court should permit Franks hearing and evidentiary hearing. Lastly, [5] From the materials presented by the affiant-police officer, thus reflects individuals such as Geri Haas, security guards from ring doorbell, text messages, etc., but **NONE shows the Defendants' act on commission of any crime.** [Exh_7] [6] The affiant and CAW deliberately hidden the above facts from the search warrant judge, there is no support for a determination of probable cause in this case. The search warrant should therefore be quashed.

For the following reasons, this Court should: (1) grant Defendants' request for a Franks hearing to conclusively determine the issue credibility, veracity, and validity of the search warrant; (2) thereafter quash the search warrant issued for Defendants, as the affiant has purposefully misled the Court.

## II. STATEMENT OF RELEVANT FACTS

### A. Case Background

A Mendones, et al vs. Cushman and Wakefield Inc., et al is a landlord-tenant disputes (Case No.: 23CV028772). When one of the neighbor-tenants became violent to the Mendones, the landlord ("CAW") ignored the complaints and or failed to resolve it, resulted to Mendones' injury. One of the neighbors named Geri Haas and her associates, Barbara Clark and Sandra Davis witnessed the cruelty and harassment the Mendones' endured from the violent tenant, including the landlord's negligence to remedy the situation. Since Haas had serious medical condition, she prepared a video testimony with the presence of Clark and Davis, for anticipation in case she could not make it on trial. The Mendones are unaware of this at that time because

they were pre-occupied on taking care of their mother with multiple illness. Haas, Clark and Davis are elders, who do not know how to upload and or download videos, that's why they entrusted it to Barbara's granddaughter. [Exh_3] There the issue arose when the video distorted by Barbara's granddaughter in vengeance with false belief she got from social media that the couple (Mendones) spread the covid virus because her fiancée died with covid.

**B. Judge Kolakowski Admitted That Her Findings Were Based Solely on Suspicion.**

When the assigned judge, Hon. Victoria Kolakowski seen this video, she suspected all of the evidence[s] presented by Mendones are products of artificial intelligence and concluded that the Mendones submitted "declarations" were falsified testimonies. She issued prior order to show cause and terminating sanction by submitting metadata on those questionable evidence[s]. On July 29, 2025, Plaintiffs timely submitted the ordered metadata. [Exh_9] It was not included in the order the expert witness' analysis interpretation of the submitted metadata. Judge Kolakowski interpreted the metadata herself. [Exh_7] Plaintiffs opposed this by saying, "a judge cannot be both a judge and expert witness in a proceeding, and in fact, she is not qualified with no credential as digital forensic metadata specialist." – Canon 3 of the Judicial Code of Conduct. Judge Kolakowski admitted this by saying,

> "The Court remains **suspicious** of the other evidentiary submissions, but it does not have the time, funding, or technical expertise to determine the authenticity of Plaintiffs' statements or conduct a forensic analysis of the suspect evidentiary submissions." ([Exh_7], # 6, p14).

Judge Kolakowski's voluminous decisions were based solely on "suspicion", in which she admitted. ([Exh_7], # 6, p14) The Mendones contended that, "Suspicion is not part of California evidence code, as suspicion alone is not a standard for admitting evidence in a court of law. The statement "suspicion is exclusion of evidence and has no legal foundation". Even though in criminal case, there's the so-called "reasonable suspicion", the United States Supreme Court nevertheless concluded that it was not "unreasonable" if the police officer could "point to specific and articulable facts which, taken together with rational inferences from those facts, meaning all cases must be justified by probable cause. – (*Terry v. Ohio*, supra, 392 U.S. 1);

(*Florida v. Royer* (1983) 460 U.S. 491, 498 [75 L. Ed. 2d 229, 236-237, 103 S. Ct. 1319].) The suspicion not just no legal foundation, but also no specific articulable facts, and not justified by probable cause. There are no validated facts to confirm the evidence. (*People v. Aldridge* (1984) 35 Cal. 3d 473 [198 Cal. Rptr. 538, 674 P.2d 240])

**C. Mendones Sought Private Investigator to Locate the Witnesses.**

The Mendones sought the service of private investigator to locate the witnesses. She confronted one of the witnesses, Barbara Clark and the latter admitted that their video testimonies were distorted by her granddaughter in vengeance for the death of her fiancée upon learning from social media that the ones her grandma was helping, are the Mendones that spread the covid virus by throwing the infected equipment on the ground. Barbara made an affidavit, apologized to court and emphasized that when the case goes to trial, she and her granddaughter are willing to testify. [Exh_3] This affidavit was filed in court and served to CAW. [Exh_5]

**D. Mendones Filed a Protective Motion Against Cushman & Wakefield**

On September 02, 2025, the Mendones filed a protective motion against CAW due to discovery abuse, intimidation and harassment. [Exh_2] In CAW's opposition pleading, they included the findings/interpretation of their hired forensic video specialist named Anthony Nelson. Anthony concluded that the videos were edited, but *no findings* of GenAI (generative artificial intelligence), neither any commission of crime by Defendants. [Exh_4]

**E. Judge Kolakowski's No Order of Referral to District Attorney in Regard to Mendones' Case**

On September 09, 2025, Judge Kolakowski dismissed the case with prejudice for failure of the Mendones to attend an in-person OSC (order to show cause) hearing due to hospitalization. [Exh_6] The protective motion was undecided but considered as moot by operation of law. Prior to hospitalization, the Mendones submitted in court their contentions, but the judge did not consider it and still dismissed the case. The judge emphasized in her ruling that, "***The Court finds that referral for criminal prosecution is <u>not</u> appropriate***". See, [Exh_7_p16] CAW was not happy on that, and emailed the Mendones indicating a referral to District Attorney must have been imposed. [Exh_1] CAW's constant threat, intimidation,

hostility and harassment to the Mendones pursued. See this for example, [Exh_1]. You have no idea how terrified the Mendones' by the intimidation, threats and harassment they endure to the attorney[s] of CAW. ["Atty. Dawson emailed saying, *"this is not going to end well for you both."*(Exh_1)] The Defendants here are just poor, who can't even afford their own representation, and heavily rely on legal assistance provided by the County. The opposing parties are rich (CAW), who can likely to instill, or plant incriminating made-up evidence to their yahoo and google accounts. That's why they preclude them from serving with search warrant.

The Mendones sought writ petition in Cal. First District Court of Appeal for disqualification of Judge Kolakowski for acted both as judge and expert witness in a proceeding. It was struck by the judge for procedural error on failure to properly serve. [Exh_14] It was summarily denied on December 02, 2025. [Exh_8] On January 05, 2026, Petitioners filed a notice of appeal for the denial of post-order reliefs under CCP §§ 473(b), 663 and 657 with Case number: A175443. [Exh_10] The case still ongoing at Cal. Courts of Appeal.

**F. Cushman & Wakefield's Contempt on Judge Kolakowski's Order.**

On January 13, 2026, the Mendones received a notification email from yahoo legal team in regard to issued search warrant. [Exh_11] On January 20, 2026, the Defendants (Ariel & Maridol Mendones) submitted a notice motion to quash and suppress the issued search warrant. [Exh_12] The Defendants learned in Alameda Superior Court, criminal division that the issued search warrant was in connection to civil case under Mendones, et al v. Cushman and Wakefield, Inc., et al. CAW is determined to prosecute the Defendants despite judge Kolakowski's ruling not to prosecute the Mendones criminally. CAW is known for contempt in disobedience to court's ruling since President Donald Trump, ( [*People of the State of New York v. Donald J. Trump, et al*., with the Index Number 452564/2022] ), still disobey judge Kolakowski's order not to prosecute the Mendones' criminally as judge's findings based solely on "suspicion". ([Exh_7], # 6, p14)

////////

## III. ARGUMENT

### A. Governing Law

Defendant has the right to challenge the veracity of statements contained in an affidavit to establish probable cause for an arrest warrant to issue. (*Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)); (*People v. Bradford*, 15 Cal. 4th 1229, 1297 (1997)). The court must grant an evidentiary hearing if the defendant makes a substantial preliminary showing that (1) the affiant has made statements which were deliberately false or in reckless disregard for the truth, and (2) after removing the improper statements, the remaining content of the affidavit is insufficient to justify a finding of probable cause. (*People v. Benjamin*, 77 Cal. App. 4th 264, 271-72 (1999)); (*People v. Sandlin*, 230 Cal. App. 3d 1310, 1316 (1991)); see Franks, 438 U.S. at 172, In California, Franks applies to omissions as well as misstatements. (*People v. Huston*, 210 Cal. App. 3d 192, 219 (1989). "A defendant who challenges a warrant based on omissions in the affidavit bears the burden of showing an intentional or reckless omission of material information that, when added to the affidavit, renders it insufficient to support a finding of probable cause." (*People v. Scott*, 52 Cal. 4th 452, 484 (2011)).

#### 1. The affiant deliberately omitted material information or made statements with reckless disregard for the truth.

The officer's affidavit included intentional or reckless false statements or omitted material facts (a *Franks motion* can be used to challenge this). - 42 U.S.C. § 1983; (*Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978)); (*People v. Luttenberger* (1990) is 50 Cal.3d 1, 265 Cal.Rptr.690, 784 P.2d 633); (*United States v. Castellanos*, 820 F. Supp. 80 (S.D.N.Y. 1993).

On November 24, 2025, the Alameda Superior Court issued a search warrant of yahoo and google accounts by Hiram Duncan, a special agent of the California Department of Justice. It includes seizure of property or things for alleged used in commission of a felony related to crime(s) of 182, 132, 118a, 530.5(a) of the California Penal Code to wit: Conspiracy ,Presenting forged evidence in legal trials or proceedings, Swearing false statements in affidavits to mislead legal proceedings, Using another's personal information for unlawful purposes, with a delayed

notification order to the target individuals for reason that will result in tampering or destruction of evidence and jeopardize an investigation cited Penal Code § 1546.2(b)(1). [Exh_13]

The source of the material the affiant presented originated from CAW certainly has purposefully misrepresented the truth about those facts without proper justification. Although Mr. Duncan, an affiant by title, signed the request for search warrant, he did not conduct any of the investigation that produced the Report, but only relied on the statements of CAW. Thus, this court should be concerned about credibility. Regardless of who is the signed affiant, the fact that the sole informant in this case, known for contempt by disobeying the order, such as of judge Kolakowski in reference to Mendones as inappropriate to be referred for criminal prosecution, concealed issues on moral turpitude (as evidence by protective motion filed by the Mendones against CAW for threat, intimidation and harassment, [Exh_2]) from the judge who issued the search warrant, that the purported affidavit of the affiant not credible.

The omitted material information presented by the law enforcement officer is based on the findings and order at alameda superior court judge Victoria Kolakowski, who already made an order stated, ***"The Court finds that referral for criminal prosecution is not appropriate"***. See, [Exh_7_p16] Judge Kolakowski admitted that her voluminous findings were based solely on "suspicion", that means no legal foundation and considered as hearsay. See ([Exh_7], # 6, p14). Another material information deliberately omitted by the affiant was the fact that CAW's own forensic video expert named Anthony Nelson concluded that the metadata submitted by Defendants had no findings of GenAI, neither presence of criminal activity. See Anthony Nelson's affidavit. [Exh_4] The affiant conceals all these facts to the search warrant judge.

On July 29, 2025, [Exh_9] Defendants provided CAW all the metadata of the evidentiary materials from the original physical evidence, plus its' flash drive, and ***none*** **shows a product of artificial intelligence neither any act of crime**. The affiant and CAW deliberately conceal this fact to the search warrant judge. CAW had given a copy of the affidavit of witness-Barbara Clark in admittance on distorting the videos. This proves that Defendants are not responsible for tampering video evidence. [Exh_3] The affiant and CAW did not

disclose this fact to the search warrant judge.

**2. The Affidavit Does Not Support A Finding Of Probable Cause.**

The United States and California constitutions require a finding of probable cause before a search warrant may be issued. (U.S. Const.. 4th Amend.; Cal. Const., art. 1, § 13.) This requirement is codified in section I525, which states that"[ a] search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person to be searched or searched for, and particularly describing the property, thing, or things and the place to be searched. "

"[P]robable cause is a flexible, common-sense standard." (*Texas v. Brown* (1983) 460 U.S . 730, 742.) "A 'practical. nontechnical' probability that incriminating evidence is involved is all that is required." (Ibid., quoting *Brinegar v. United States* (1949) 338 U.S. 160, 176.) "This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's . .. belief that probable cause exists without detailing any of the 'underlying circumstances ' upon which that belief is based. " (*U.S. v. Ventresca* (1965) 380 U.S. 102, 108.)

The test for probable cause is based on the totality of the circumstances, which allows deficiencies in one area to be compensated for by strengths in another, and ultimately tasks the issuing magistrate with making "a practical , common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 233, 238.) "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." (Id. at p. 239.) The totality of the circumstances test has been adopted by California courts. (*People v. Brueckner* (1990) 223 Cal.App.3d 1500, 1504.)

In 2014, the United States Supreme Court held that a search warrant is required to search

the contents of a cell phone, noting that cell phones contain "detailed information about all aspects of a person's life." (*Riley v. California* (2014) 573 U.S. 373,396,403 ("Riley").) CalECPA was enacted in California after the holding in Riley. Pursuant to CalECPA, a warrant seeking access to electronic communication information must "describe with particularity the information to be seized by specifying, as appropriate and reasonable, the time periods covered, the target individuals or accounts, the applications or services covered, and the types of information sought ... . " (§ 1546.1, subd. (d)(l).)

Probable Cause (PC §1524): A warrant must be supported by affidavits establishing that a crime was committed, and evidence exists in the place to be searched.

Here, in the affiant's affidavit, he did not establish facts that a crime was committed by Defendants, neither presented any evidence and or witness affidavit attesting that a crime is committed by yahoo and google accounts of the users. The omitted material information presented by the law enforcement officer is based on the findings and order at alameda superior court judge Victoria Kolakowski, who already made an order stated, ***"The Court finds that referral for criminal prosecution is not appropriate"***. See, [Exh_7_p16] Judge Kolakowski admitted that her voluminous findings were based solely on "suspicion", that means no legal foundation and considered as hearsay. See ([Exh_7], # 6, p14).

Probable cause requires concrete evidence that a crime has likely occurred, a higher standard than reasonable suspicion. While reasonable suspicion is based on articulable facts, it is insufficient for arrests or search warrants, which require the higher, more evidence-based probable cause standard. Here, affiant did not even present any *concrete evidence* proving Defendants as the ones who actually committed a crime on felony out of their yahoo and google accounts. (*People v. Simon*, 45 Cal.2d 645, 290 P.2d 531 (Cal. 1955)); (*People v. Manis*, 268 Cal. App. 2d 653, 74 Cal. Rptr. 423 (Cal. Ct. App. 1969))

Further, the material presented by the affiant came from the order by trial judge Kolakowski's who admitted solely from her baseless "suspicion". That's why she ordered to refrain criminal prosecution against the Defendants, in which CAW violated in contempt of

judge's order. ([Exh_7], # 6, p14).

The search warrant failed to establish probable cause. According to the issued search warrant dated November 24, 2025, the following Yahoo and Google users' accounts subject for search warrants are the following: mendonesa8@gmail.com, mcruz_tx_usa@yahoo.com and akaswaki@yahoo.com, in addition is internet service providers, google contacts, google one record, google files, google links, IP address logs, google drive, etc., because these properties or things used as a means of committing a felony or tends to show particular person has committed a felony under Cal. Penal Code §§ 182, 132, 118a, 530.5(a) for evidence of conspiracy, presenting forged evidence in legal trials or proceedings, swearing false statements in affidavits to mislead legal proceedings, using another's personal information for unlawful purposes.

Yahoo and Google accounts are not the methodological tools expert witnesses utilize in analysis and interpretation of metadata. Only forensic digital specialist who can determine if the evidentiary submissions are forged, and personal information from Yahoo and Google accounts are meaningless. Presumptuous remarks without presenting evidence do not establish probable cause. (*People v. Pressey* (2002) 102 Cal.App.4th 1178, 1185.) A finding of probable cause cannot be made from an affidavit that is purely conclusory. (*U.S. v. Ventresca*, supra. 380 U.S. at p. 108.) An affidavit must contain detailed circumstances with reasons why the source of the information is credible, and not from hearsay, speculation, belief, suspicion and or assumption. (Id. at pp. 108- 109.) When the gloss of advocacy is stripped away, the instant warrant simply did not establish probable cause for the overwhelmingly invasive search requested. The warrant has no actual facts, instead composed of conclusory allegations and speculation by the affiant. The warrant was lengthy and difficult to navigate, consisting of multiple interconnected and self-referential documents. No facts were presented supporting allegations of actual illegal conduct by Petitioner. Neither inappropriate conduct nor policy violations provide probable cause for an overbroad and intrusive search warrant such as the one in the instant case. Presenting private emails that belong to Petitioners does not constitute

criminal activity. The warrant quite simply did not contain allegations of criminal activity supported by any concrete facts. The warrant certainly did not contain allegations sufficient to justify access to Petitioner's entire electronic existence. The court must consider the totality of the circumstances in which the affiant lacked; the warrant challenged in the instant motion was not supported by probable cause.

The search warrant for Petitioners' Yahoo and Google accounts is irrelevant on issue of metadata forensic analysis on evidentiary submissions and presentation of in-person witnesses.

**B. No Delayed Notification Order From the Search Warrant Judge.**

CalECPA also includes a notice requirement. Section 1546.2, subdivision (a)(l ), states that the target of the warrant must be provided notice contemporaneously with execution of the warrant, stating with reasonable specificity the nature of the investigation. "The notice shall include a copy of the warrant or a written statement setting forth facts giving rise to the emergency ." (§ 1546.2, subd. (a)(l).) If the court finds reason to believe that notification may trigger an adverse result, the court may order delayed notification , not to exceed 90 days. (§ 1546.2, subd. (b)(l).) An "adverse result" is defined as either danger to the life or physical safety of an individual, flight from prosecution. destruction or tampering with evidence, intimidation of potential witnesses, serious jeopardy to an investigation , or undue delay of a trial. (§ 1546, subd. (a).)

If you noticed the search warrant order from the judge,

> "You are ordered to execute as follows:
> Place(s) to be searched: Described in Exhibit 1A, attached hereto and incorporated by reference.
> Property to be seized: Described in Exhibit 1B, attached hereto and incorporated by reference.
> Disposition of property: All property seized pursuant to this search warrant shall be retained in the affiant's custody pending further court order pursuant to Penal Code §§ 1528(a), 1536. [Exh_13]

If you noticed, the search warrant judge had no delay notification order, that means a notice requirement must be provided to the target contemporaneously with execution of the warrant. The search warrant was issued on November 24, 2025 and must be executed promptly. The target of the warrant, (Defendants or the Mendones) are required to be

provided by the affiant of the issued search warrant on November 24, 2025, but none have received by the Defendants from the affiant. - CalECPA Section 1546.2, subdivision (a)(l ).

Failure to serve a search warrant on the target, or occupant of the premises, typically renders the *search unreasonable* under the Fourth Amendment and California law, potentially leading to suppression of evidence via a "Motion to Suppress" (Penal Code §1538.5). While the warrant itself might be valid, *improper execution* (e.g., failure to provide a copy, violating "knock-notice" rules under Penal Code §1531) can result in evidence being excluded as "fruit of the poisonous tree"

In California, the **failure to provide proper or insufficient notice to the users of the Yahoo and Google or the target of a search warrant** can lead to the **suppression of evidence seized**. Procedural violation suppresses evidence seized under California Penal Code § 1538.5. (See *Price v. Superior Court* (2023) 93 Cal. App. 5th 13, 58, 310 Cal.Rptr.3d 520.); (*People v. Meza* (2023), 90 Cal. App. 5th 520)

The Defendants here demand suppression, the evidence seized must be excluded and the case be dismissed for improper service of warrant. Improper or absence of service of warrant from investigator lead to dismissal. (*People v. Hobbs*, 7 Cal.4th 948, 873 P.2d 1246, 30 Cal.Rptr.2d 651 (Cal. 1994)); (*Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969))

## C. Overbroad Scope of Search Authorized by Warrant

The Search Warrant, issued on November 24, 2025, authorized the special agent named Hiram Duncan to search "[a]ll electronic communications, internet service provider, business records, and properties to be seized." Properties to be seized are the following: [Exh_13]

> **Google LLC**
> FOR THE FOLLOWING RECORDS:
> Records from the above listed Service Provider for the Email Address:
> **Mendonesa8@gmail.com**
> In compliance with California Electronic Communications Privacy Act referenced by California Penal Code § 1546.1(d)(1), each of the types of records specified below associated with the Google LLC account shall be for the period of **10/1/2020 to 10/27/2025**. The provided records shall be reviewed for evidence related to the crime(s) of: 182,132,118a, 530.5(a) of the California Penal Code to wit: Conspiracy, Presenting forged evidence in legal trials or

proceedings, Swearing false statements in affidavits to mislead legal proceedings, Using another's personal information for unlawful purposes.

**Contacts:** Contacts stored by the Target Account including name, contact phone numbers, e-mails, social network links, and images.
**Google One records:** Records of the Target Accounts use of Google One services to include which Google One products are utilized by the Target, subscription level and payment information, stored files and their connected sources, stored device backups, account identifiers of users that the Target Account's Google One storage is shared with, and records of the Target Accounts use of the Google One Virtual Private Network (VPN) to include dates and times of VPN activation, utilized IP addresses, and recorded activity.
**Google files:** Records of the Target Accounts use of the Google Files app to include the names of files deleted using the Google Files app, if available, and information about files that were synced to Google drive or shared via the app.
**Google Keep:** Google Keep records to include the content of Keep notes, embedded media, and stored files.
**Linked accounts:** Records of all linked external accounts or associated email address, username, or contact information connected to the Target Account including but not limited to recovery email addresses. Subscriber information: Basic registration or customer information to include name, address, phone number, contact information, additional accounts, and dates associated with account creation and/or suspension for the above listed Target Account.
**Gmail records:** Google Gmail records related to the Target Account to include subscriber registration information; sign-in IP addresses and associated time stamps; email header information; and all Google LLC stored electronic communications including saved, deleted, sent, stored, & draft email; stored notes; stored chats and chat logs; account histories; attached files to include digital images, videos, documents, links, and any other files associated with the Target Account.
**Google Messages:** Records of stored Google Messages both synced from Google devices used by the Target account or via Google Message for Web for the dates indicated. Such records shall include dates and times of messages, message sender and recipient identifiers, and message content with attachments.
**Google Voice records:** Stored communications such as Call, Text, and Data detail records associated with the identified Target Account for the above listed dates and times. These records shall also include all text message or chat content, voicemails and transcriptions, any other stored communications, and any shared files both sent or received. These records shall include stored audio recordings of Google Voice calls, if available. IP address logs: Information related to IP addresses used for the creation of the Target Account as well as IP addresses used to access to Google LLC apps and services or where the user took actions like uploading files or sending messages. Such records should include the dates and times of such events.
**Google Calendar events:** Stored calendar data for the Target Account to include shared calendars and records showing what account the calendar was shared with.
**Google Docs files:** Stored Google Docs records to include Docs, Sheets, Slides, and Forms to include records of collaboration and sharing that show who these file(s) were shared with or accessed by and shall include archived copies of Docs, Sheets, Slides, and Forms.
**Google Drive:** Stored files in Google Drive stored by or accessible to the Target Account to include the files EXIF or metadata and records that indicate if a file was shared or accessed by anyone other than the listed Target Account

with their associated account identifiers.
**Google Forms:** Records of the Target Accounts use of Google Forms to include forms and surveys that the target created, manages, or participated in with the associated form results.
**Google Photos:** Stored photo and video files to include associated metadata & geo-location data and associated album name, photo image tags provided by the Target Account, tagged photos and the identities of persons tagged in the Target Account's photos if associated with a Google account.
Web and app activity (Including Search): Stored search and internet history activity on apps and browsers from Search, Maps, Now, and other Google products. These records shall also include records collected by the Target Account's use of the Google Toolbar if installed and while the Target Account was signed in.
**Google Gemini:** All prompt history, prompt responses, and documents, videos, or files generated using Google Gemini including timestamps, metadata, and logs regarding user activity.

**Yahoo!**
FOR THE FOLLOWING RECORDS:
Records from the above listed Service Provider for the Email Address:
**akaswaki@yahoo.com, mcruz_tx_usa@yahoo.com**
Each of the types of records specified below shall be for the period of **10/1/2020 to 10/27/2025**. for evidence related to the crime(s) of: 182, 132,118a, 530.5(a) of the California Penal Code to wit: Conspiracy, Presenting forged evidence in legal trials or proceedings, Swearing false statements in affidavits to mislead legal proceedings, Using another's personal information for unlawful purposes.
**Subscriber information:** Subscriber information to include name, address, phone number, contact information, additional accounts, and dates associated with account creation and/or suspension for the above listed Target Account.
**Stored Communication:** Stored electronic communications including saved, deleted, sent, stored, & draft email; account histories; digital images, buddy lists, method of payment, detailed billing information, and any other files associated with User and/or User account(s).

Specificity Requirement for a Search Warrant: The warrant must particularly describe the place to be searched and the persons or things to be seized. Overly broad search warrant lacked particularity leaving too much discretion to the officers, *thus considered an invalid warrant.* – Fourth Amendment of the Constitution; California Penal Code Sections 1525, 1523; ( *People v. Dawes*, No. D081586 (Cal. Ct. App. Jan. 31, 2024)); (*Millender v. County of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010)); (*Flack v. Municipal Court* (1967), a California Supreme Court case regarding obscenity and search warrants must not be broad as fishing expeditions, 66 Cal. 2d 981, 429 P.2d 192, 59 Cal. Rptr. 872 (July 3, 1967)).

Here, the issued search warrant was overly broad, without specificity and or particularity appeared as fishing expedition, thus considered as an invalid search warrant. Invalid search

warrant suppresses evidence. - Penal Code Section 1538.5; (*United States v. Leon*, 468 U.S. 897 (1984)); (*Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)

**D. CalECPA Provides Robust and Mandatory Protections Were, As Here, Digital Privacy Is At Stake**

**l. Heightened Particularity Requirement**

A decade ago, the United States Supreme Court in *Riley v. California* (2014) 573 U.S. 373, 396 recognized that today's digital devices contain vast amounts of extremely sensitive, private information. The Riley Court observed: "Electronic information, such as emails are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans the privacies of life." (ld. at pp. 396,403, citation omitted.) Following Riley, the California Legislature enacted CalECPA, Penal Code section1546 et seq., to modernize California's privacy protections in the digital age. The Act establishes two important safeguards to protect Californian's privacy rights when electronic communications and device information are subject of a search. These rules go beyond those present in federal law. (Nicole Ozer, *California is Winning the Digital Privacy Fight* (Nov. 7, 2015)Tech Crunch <htps://techcrunch.com/2015/l l/07/california-now-has-the-strongestdigital-privacy-law-in-the-us-heres-why-that-matters/>).

CalECPA protects all "electronic device information" and all "electronic communications information" from government access, no matter the source or nature of that information.(See Pen. Code, § 1546, subd. (d) [definition of "electronic communication information"]; Id., § 1546, subd. (g) [definition of "electronic device information"]; Id, § 1546.1, subd. (a)(1)(3) [protecting both electronic communication and device information].) And second, CalECPA requires that any warrant seeking access to electronic information be highly specific and narrowly cabined. The statute mandates that a search warrant "describe ***with particularity*** the information to be seized by specifying, as appropriate and reasonable, the time periods covered, the target individuals or accounts, the applications or services covered, and the types of information sought . . . ." (Id, § 1546.1, subd. (d)(1), emphasis added.)

CalECPA's heightened particularity requirement is a direct response to the conclusion

in Riley that government officials should not be allowed to broadly rummage through the "vast quantities of personal information" on our digital devices. (Riley, supra,573 U.S. at p. 386.) The Supreme Court reinforced this understanding in *Carpenter v. United States* (2018) 585 U.S. 296, noting that an emails and or digital information faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." (Id at p. 31 l.) California courts are similarly in accord because there is no question that a digital search could potentially expose a large volume of documents or data much of which may have nothing to do with illegal activity." (*People v. Appleton* (2016) 245 Cal.App.4th 717, 725.) Such documents or data "include, for example, medical records, financial records, personal diaries, and intimate correspondence with family and friends." (*Ibid.)*

As discussed ante, CalECPA details specific requirements for a warrant seeking access to electronic communication information. These requirements appear to have been completely disregarded in this instant case. As discussed ante, a warrant for electronic communication information must state with particularity the information to be seized , the time period to be covered, the applications and services covered, and the information sought. (§ 1546. l, subd. (d)(l) .) The instant search warrant made no attempt to limit the amount of information to be searched. General warrants permitting unlimited searches have "long been condemned," even before the advent of smart phones and the passage of CalECPA. (*Aday v. Superior Court* (l961) 55 Cal.2d 789, 796.) In the digital age, particularity and specificity in search warrants are more important than ever.

The warrant sought all information associated with all their Yahoo and Google accounts. It is not an overstatement to describe this warrant as seeking access to Defendants' entire electronic existence, which likely contains details about his entire life, including everywhere he has been , everyone he has communicated with, every financial transaction they have made , and every piece of information they have searched. As seemingly no attempt was made to limit the scope of the search, it is impossible to conclude that the search warrant complied with the

particularity requirements of CalECPA. Even if the warrant was supported by probable cause, discussed *post*, the court would still be required to invalidate the warrant as it does not meet the particularity requirements of CalECPA

**2. Explicit Remedies for any Violation**

One prominent feature of CalECPA's privacy framework are the remedies available for violations of CalECPA, as well as for violations of the California and United States Constitutions. These remedies reflect that the Legislature understood the implications of robust judicial enforcement to address a violation of law, including suppression of evidence, the invalidation of search warrants, and the wholesale deletion of unlawfully obtained material. Specifically, the statute provides that" if a search warrant violates CalECPA or the California or United States Constitutions, the targeted individual may petition the court to void the warrant or to order the destruction of any improperly obtained data or information. (Pen. Code, § 1546.4, subd.(c); see also *Saunders v. Superior Court* (2017) 12 Cal.App.5th Supp. 1, 2213 [CalECPA "provides additional privacy protections" and remedies given the "heightened privacy concerns in both cellphone records, emails and content"]); (*Elkins v. United States* (1960) 354 U.S. 206, 217 [emphasizing importance of robust remedies].) [2]

Alternatively, a court may appoint a "special master" to ensure that only information necessary to achieve the objective of the warrant . . . is produced or accessed." (Id., § 1546.1, subd. (e)(l).) These provisions reflect that the Legislature recognized two important characteristics of digital-age information: that people who communicate with the target of a warrant can have their privacy invaded by overbroad or unlawful warrants; and that the mere possession of information by the government (even if it is locked away) has the potential to cause harm.

**3. Suppress Any Electronic Information in Violation of the Fourth Amendment of the United States Constitution or of CalECPA.**

[2] That CalECPA authorizes the voiding of a warrant, or the destruction of evidence is an important feature of the statutory scheme and one that required CalECPA to pass the California Legislature by a supermajority vote. (See Cal. Const., art. I, § 28, subd.(f)(l).) The two-thirds majority was necessary because the law mandates suppression of information beyond that which is required by the United States Constitution. (In re *Lance W.* (1985) 37 Cal.3d 873,879.)

Section 1546.4, subdivision (a), states that any person "may move to suppress any electronic information obtained or retained in violation of the Fourth Amendment to the United States Constitution or of [CalECPA ]." Section 1546.4, subdivision ( c ), states that an individual targeted by a warrant "may petition the issuing court to void or modify the warrant .... " While it appears that the court does have the discretion to modify the warrant pursuant to section 1546.4, subdivision (c), the proper remedy in this case is to quash the search warrant, return all seized property, and destroy all seized information.

As discussed *ante*, the warrant was lacking in probable cause and failed to comply with any of CalECPA 's particularity requirements. It does not appear that some portions of the warrant may be valid. When the warrant as a whole was in violation of CalECPA, the court must not attempt to undertake the onerous task of sifting through the voluminous documents in order to recover salvageable portions of the warrant, assuming for the sake of argument that any exist.

## E. The Warrant is Overbroad in Violation of CalECPA, the Fourth Amendment, the First Amendment, and the California Constitution

### 1. The Warrant Fails to Satisfy CalECPA's and the Fourth Amendment's Particularity Requirements

When measured against the rubric of the Fourth Amendment and CalECPA, the search warrant for Petitioners fail the test. Both require that a warrant describe with particularity not only the material that can be seized, but also the specific areas, things, and time periods that can be searched for that material. (Pen. Code, § 1546.1, subd. (d)(l).) This particularity requirement prevents overbroad searches and serves as a buttress against "reviled general warrants"' with the government's "rummaging" through our personal lives. (Riley, supra, 573 U.S. at p. 403.) The particularity requirement's corollary is that any warrant authorizing a privacy invasion be "as limited as possible." (*Coolidge v. New Hampshire* (1971) 403 U.S. 443, 467.) Indeed, "[b]y limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory

searches the Framers intended to prohibit." (*DiMaggio v. Superior Court* (2024) 104 Cal. App. 5th 875, 887.)

To determine if a warrant is overbroad, courts consider whether probable cause existed to seize all items of a category described in the warrant and if the government could have provided more particularity based on information available. "'[G]eneric classifications in a warrant are acceptable only when a more precise description is not possible.'" (*United States v. Kow* (9th Cir. 1995) 58 F. 3d 423,427) [quoting *U.S. v. Cardwell* (9th Cir. 1982) 680 F. 2d 75, 78].) In *People v. Meza* (2023) 90 Cal. App. 5th 520, for example, the court found portions of the warrant overbroad where, inter alia, the timeframe was not narrowly tailored given the information available. (*Id.* At pp. 529-40; see Kow, supra,58 F.3d 423, 427 [warrant not sufficiently particular where it did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place]; see also *United States v. McCall* (11th Cir. 2023) 84 F.4th 1317,1328 [By narrowing a search to the data created or uploaded during a relevant time connected to the crime being investigated, officers can particularize their searches to avoid general rummaging."].)

Nowhere are these constitutional principles more apt than when the search target is one's digital device, which contains electronic information that is susceptible to "over-seizing." As the Ninth Circuit explained in *United States v. Schesso* (9th Cir. 2013) 730 F.3d 1040: "Because electronic devices such as emails can contain vast quantities of intermingled information, raising the risks inherent in over-seizing data, law enforcement and judicial officers must be especially cognizant of privacy risks when drafting and executing search warrants for electronic evidence." (Id at p. 1042; Appleton, supra, 245 Cal.App.4th at pp. 725-26 [as soon as an officer views personal information during the execution of a search, privacy interests are "compromised"].)

The search warrant at issue here flies in the face of this law. It permits the search of virtually all data stored on Petitioners Yahoo and Google from year 2020 to 2025, and it demands access to "all communications content," "all location data," "all photographic/ video/

audio data, all internet history, and all indicia of ownership (*Ibid*) It is hard to reconcile how a search with such an unfixed beginning date could be tethered to a time-bounded act of uncertainty on commission of a crime. The search warrant's time frame is both meaningless and all encompassing. The searches are like from presumably date, or date range, but by pegging the start of the search by failing to address how data imported from any of Petitioners prior digital devices should be treated, the warrant improperly authorizes the search of Petitioners' entire digital life.

The warrant's scope is similarly unrestricted. It authorizes a search of everything from Defendants' internet search history to her texts with family to the metadata on every one of their photographs. And the warrant vaguely identifies items of information to be seized as the "evidence and instrumentalities" of unjustified crime out from suspicion, speculation, belief and assumption. But as is relevant here, some courts have found warrants overbroad even when the warrant confined a "search to only records that are evidence of the violation of a certain statute." (*United States v. Cardwel*, (9th Cir. 1982) 680 F.2d 75,77-78; see also *United States v. Clark* (9th Cir. 1994) 31 F.3d 831, 836 [holding that warrant authorizing search for narcotic controlled substances, drug paraphernalia, marijuana cultivation equipment, instructions, notes, cultivation magazines, currency, documents, and records and fruits and instrumentalities of [a] violation of Title 21 U.S.C. § 841(a)(1) was "facially overbroad" because it provided no guidance about the fruit or instrumentality of the alleged crime].)

The warrant in this case covers a nebulous, nearly unrestricted time period and fails to describe with particularity the items to be seized, making it indistinguishable from an unconstitutional general warrant. Under CalECPA and the Fourth Amendment, these failures justify the Court's swift intervention.

**2. The Search Warrant is Overbroad in Violation of Petitioners' First and Fourth Amendment Rights.**

The First and Fourth Amendments support privacy, protecting individuals from unreasonable government intrusion. And yet, the search warrant impermissibly encroached on these rights by authorizing law enforcement to examine years' worth of internet searches, geolocation

data, photographs, and electronic information without any meaningful temporal limits.

**F. The Search Warrant Should be Quashed.**

The search warrant in this case is based squarely upon the affiant's report originated solely from CAW. The source (CAW) engaged in a consistent pattern of contempt and unethical business practice. If the report is stricken, the search warrant cannot stand. It should be quashed.

**G. The Court Must Hold a Franks Evidentiary Hearing.**

As above, if the Defendant makes the preliminary showing required, the trial court must hold a Franks evidentiary hearing. *Franks*, 438 U.S. at 155-56; *Bradford*, 15 Cal. 4th at 1297. At the hearing, the defendant has the burden to prove (on a preponderance standard) that materially false statements or omissions were made deliberately or in reckless disregard for the truth. *Franks*, 438 U.S. at 155-56; *Bradford*, 15 Cal. 4th at 1297. If the affidavit with the addition of the material information is insufficient to establish probable cause, "the warrant must be voided." *Bradford*, 15 Cal. 4th at 1297; see also *Scott*, 52 Cal. 4th at 484.

Here, significant evidence shows that the affiant deliberately concealed material information in reference to judge Kolakowski's order refrain criminal prosecution to Defendants, Nelson's findings on absence of criminal activity for Defendants, Barbara Clarks affidavit attested that Defendants did not tamper video evidence, and July 29, 2025's evidentiary metadata does not indicate any criminal activity by Defendants.

In *United States v. Hall*, the court held that where omitted information goes to the heart of a witness's credibility, and where there is "virtually no evidence" without that witness, the warrant should be voided." 113 F 3d at 160-61. The court noted that the judge reviewing the warrant request" depend(s] on the [officer] to present him with the truth, and to bring to his attention problems with their informant's credibility." 1d. at 160 (emphasis added). Similarly, in this case, the search warrant judge that reviewed the warrant application relied on Investigator  to highlight any issues with respect to the basis of the warrant against the Defendants. Their collective intentional and/or reckless failure to do so provided the Report a

false sense of reliability. When CAW's contempt history of disobeying court's orders — if established —is considered, the Report loses all credibility and cannot establish probable cause.

The Court must permit a Franks hearing in order the Defendants scrutinize the validity of the issued search warrant. Defendants move to traverse the purported search warrant focusing on the veracity of the affidavit and the information contained therein. By the evidence[s] herein, thus controverts the affiant's issued search warrant, that proves that the law enforcement officer's search warrant does not contain probable cause, which means evidence of a crime is not present in Defendants' yahoo and google accounts.

A valid search warrant must state as to how users' yahoo and google accounts became tools in commission of a crime, including as to how their google drive, LLC, docs files, etc., that stored their medical information, social security, bank accounts, personal photos, sensitive information from physicians, medical records, health insurance, W2, paystubs, PASSWORDS, credit card information, family sensitive information, employment record, educational record, birth certificates, passport records, and other personal, sensitive and confidential information, wherein even their family members personal information wanted to gain access by the police officer. *Can the Court guarantee that accessing these records would not compromise Defendants' privacy data including their loved ones whom they share each other's accounts?*

### H. The Court Must Order to Affiant to Produce Evidence to Traverse the Veracity of an Affidavit Supporting a Search Warrant.

In *People v. Broome* (1988), 201 Cal.App.3d 1480, is a California appellate case regarding the rights of defendants to discover evidence (specifically the substance seized in a controlled buy) to challenge ("traverse") the veracity of an affidavit supporting a search warrant. The court affirmed the dismissal of the case because the prosecution willfully failed to comply with the discovery order to produce the substance.

The Defendants in this case request this Court for an order to the affiant to produce evidence, such as eyewitness, showing that Defendants act of crime using ***only*** their yahoo and google accounts as tools to generate AI, to forge and steal someone's identity, who are those victims of identity theft, the injury inflicted to those victims, evidence from ring doorbell

company attesting that their equipment was fake generated by AI, evidence of the identities of those security guards including the witness-Morgan King captured on ring doorbell security camera, affidavit from those bashers who sent text messages and eyewitness attesting that Defendants made up those text messages, evidence in details as how possible that the Defendants with both having existing medical conditions, who can't even make their own videos, sooner becoming senior citizens skillfully able to generate sophisticated artificial intelligence or AI, description on details on how the acts of crime committed, how Defendants able to manufacture the diagnosis, EKG monitoring with the use of hypnosis and treatment of their psychiatrist/psychologist including the methodological tools these specialist utilized (how the affiant proves those are not real who treated the Defendants for decades), evidence that by simply using yahoo and google accounts as tools in interpretating metadata, etc. If the affiant failed to comply with these huge and time-consuming evidence[s], the Court may dismiss the case entirely by virtue under *People v. Broome* (1988). Maybe a year is not even enough to produce all these evidence[s].

**I. The Court Should Order the Return of Defendants' Seized Properties in Yahoo and Google**

Pursuant to *Gersherhorn v. Superior Court, Los Angeles County* (1964) 227 Cal. App. 2d 361, Defendants request that the Court order the return of their seized Yahoo and Google properties. The right to regain possession of one's property is a "substantial right." (*Franklin v. Municipal Court* (1972) 26 Cal. App. 3d 884, 896.) And both criminal defendants and nondefendants alike may move for the return of seized property on the basis that a search warrant or seizure was unlawful. (*Ensoniq*, 65 Cal.App.4th at p. 1537.)

Here, Defendants' seized properties from Yahoo and Google was taken on November 24, 2025. The continued retention of their properties with no criminal action pending violates Defendants' due process rights especially, when special agent officer has had the capacity and opportunity to seize all data subject to the search warrant and should no longer require possession of the properties. (*People v. Lamonte* (1997) 53 Cal.App.4th 544, 549.)

/ / / / / / / / /

## IV. CONCLUSION

For the foregoing reasons, Defendants request for Franks evidentiary hearing and order affiant to produce evidence that supports their allegations pursuant to Defendants' discovery rights. The search warrant should be quashed, suppressed the seized properties from Yahoo and Google accounts be returned to Petitioners, and all information obtained pursuant to the warrant destroyed. (Pen. Code, §§ 1546.1(d)(2), (e)(2), 1546.4(c), 1538.5 (authorizing courts to "order the destruction of any information obtained in violation of this chapter"). Users of these accounts are not properly served suppresses the evidence seized leading for dismissal

Dated: February 08, 2026

Respectfully submitted,

ARIEL MENDONES
*Petitioner, In Pro Se*

MARIDOL MENDONES
*Petitioner, In Pro Se*

/////////

**DECLARATIONS**

We, ARIEL MENDONES and MARIDOL MENDONES, declare the following;

1. That we are the Petitioners on these notice petition and motion for Franks hearing, to quash and to suppress evidence in reference to issuance of search warrant for Yahoo and Google for all the records in association for the following accounts: mendonesa8@gmail.com, mcruz_tx_usa@yahoo.com and akaswaki@yahoo.com.
2. We have personal knowledge on the contents of this declaration and willing to testify in Court as deemed necessary.
3. That the evidence[s] herein contained in exhibits are true and correct copy as reflected in the court's record at the Alameda Superior Court, Rene C. Davidson Courthouse in Oakland, CA, on Case Number: 23CV028772.

We declare under penalty of perjury under the laws of the State of California that the foregoing statement is true.

Dated: February 08, 2026

Respectfully submitted,

ARIEL MENDONES
*Petitioner, In Pro Se*

MARIDOL MENDONES
*Petitioner, In Pro Se*

////////

Case Number: ____________________ Warrant Number: 2025_9275

## PROOF OF SERVICE

I am a citizen of the United States. My address is 2416 W Tennyson Rd. Hayward, CA 94545. I am over the age of 18 years and not a party in this cause of action. I am familiar with the collection and processing of mailing in the United States Postal Service and is deposited the same day as the day of collection in the ordinary course of business.

On February 08, 2026, and or later dates, the following ordinary business practice, I serve a true copy of the foregoing document described as:

**NOTICE OF PETITION AND MOTION FOR FRANKS EVIDENTIARY HEARING, MOTION TO QUASH AND TO SUPPRESS EVIDENCE IN REGARD TO ISSUED SEARCH WARRANT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION AND EXHIBITS**

**DEFENDANTS' AFFIDAVITS OF WITNESSES IN SUPPORT THEREOF**

**NOTICE OF REMOVAL TO UNITED STATES NORTHERN DISTRICT OF CA**

I serve on the address as follows:

| | | |
|---|---|---|
| THE INTERNET SERVICE PROVIDER known as Google LLC<br>Attn: Google Legal/Investigations Support<br>1600 Amphitheatre Parkway<br>Mountain View, CA. 94043<br>Phone: (844) 383-8524<br>Email: uslawenforcement@google.com<br>Service via digital upload: Law Enforcement Request System (LERS) | THE INTERNET SERVICE PROVIDER known as: Yahoo Inc.<br>Attn: Custodian of Records<br>391 San Antonio Rd (Floors 5 & 6)<br>Mountain View, CA 94040<br>Service via electronic upload: https://app.kodexglobal.com/ yahoo-inc/signup<br><br>YAHOO! LEGAL CONTACT INFORMATION<br>Compliance Team, Yahoo! Inc.<br>701 First Avenue<br>Sunnyvale, California 94089<br>Phone: 408-349-3687<br>Fax: 408-349-7941 | ALAMEDA COUNTY DISTRICT ATTORNEY'S OFFICE<br>California Department of Justice<br>Hiram Duncan, Special Agent<br>Rene C. Davidson Courthouse<br>1225 Fallon Street<br>Room 900<br>Oakland, CA 94612<br>Phone: (510) 272-6222<br>Email: Alcoda@acgov.org |

Via certified and or first-class postal mail and email.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This declaration executes on February 08, 2026, in Hayward, CA.

PnWright
PENNY WRIGHT
*Declarant, Server*

# EXHIBIT_A: The Issued Search Warrant and the Affiant's Information Material

# SUPERIOR COURT OF CALIFORNIA

## County of Alameda

## SEARCH WARRANT

**THE PEOPLE OF THE STATE OF CALIFORNIA**
to any peace officer in Alameda County

Warrant No. 2025-9275

The affidavit below, sworn to and subscribed before me, has established probable cause for this search warrant which you are ordered to execute as follows:

**Place(s) to be searched**: Described in Exhibit 1A, *attached* hereto and incorporated by reference.

**Property to be seized**: Described in Exhibit 1B, *attached* hereto and incorporated by reference.

**Night service**: [If initialed by judge] For good cause, as set forth in the Statement of Probable Cause, night service is authorized: _________

**Disposition of property**: All property seized pursuant to this search warrant shall be retained in the affiant's custody pending further court order pursuant to Penal Code §§ 1528(a), 1536.

11/24/25 2:41 PM
Date and time warrant issued

Judge of the Superior Court

## ◆ AFFIDAVIT ◆

**Affiant's name and agency**: Special Agent Hiram Duncan, California Department of Justice

**Incorporation**: The facts in support of this warrant are contained in the Statement of Probable Cause which is incorporated by reference. Incorporated by reference and *attached* hereto are Exhibit 1A, describing the place(s) to be searched; and Exhibit 1B, describing the evidence to be seized.

**Evidence type**: (Penal Code § 1524)

- ☐ Stolen or embezzled property.
- ☑ Property or things used as a means of committing a felony.
- ☑ Property or things that are evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony.
- ☐ Property or things consisting of evidence that tends to show that sexual exploitation of a child, in violation of Penal Code § 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Penal Code § 311.11 has occurred or is occurring.
- ☐ Firearms, deadly weapons: The warrant authorizes a search for a deadly weapon in the following premises:
  - **5150**: The premises are occupied or controlled by a person who is in custody on a 5150 W&I hold.
  - **Domestic violence**: The premises are occupied by a person arrested for a domestic violence incident involving threatened harm.
  - **No firearms order**: The premises are owned or controlled by a person who is prohibited from possessing firearms pursuant to Family Code § 6389.

☐ **Night Service**: [If checked] Authorization for night service is requested based on information contained in the Statement of Probable Cause, filed herewith.

**Authorization to implement special procedure(s):** The Affidavit filed herewith has demonstrated legal justification for the implementation of the following special procedures which shall be employed by the officers who execute this warrant:



11/24/25

**California's Electronic Communications Privacy Act (ECPA) ORDER**
IT IS HEREBY ORDERED that pursuant to California Penal Code § 1546.1(d)(2), any information obtained through the execution of this warrant that is unrelated to the objective of the warrant shall be sealed and shall not be subject to further review, use, or disclosure absent an order from the Court, or to comply with California code 1054 and Brady v Maryland.

**Certificate of Records ORDER**
IT IS HEREBY ORDERED that In compliance with the California Electronic Communications Privacy Act, the Service Provider listed in the search warrant shall provide a valid "Certificate of Records" document consisting of an affidavit which meets requirements of California Evidence Code section 1561 and that the document be returned to the affiant along with a copy of the requested records.

**Five Business Day Record Production ORDER**
IT IS HEREBY ORDERED that the organizations described in this search warrant shall produce the requested records within five (5) business days of receipt of this search warrant.

**California's Prohibited Violation Attestation**
Based on the declaration, the Court finds this search warrant is not related to an investigation into, or enforcement of, a prohibited violation as defined in California Penal Code § 629.51.

**Extension Date of Return to Search Warrant**
IT IS HEREBY ORDERED the affiant or representative of the California Department of Justice need not return this warrant and produce the records within the required days of service to this court for good cause demonstrated in the affidavit. Instead, the warrant and records shall be produced promptly upon receipt. If the requested records are not provided to your affiant within 90 days of the execution of this search warrant, said affiant shall return a notice informing the court of the non-production of records or petition the Court for an extension on or before 01/22/2026.

**Delayed notification order**: The affidavit herein has established sufficient reason to believe that immediate compliance with the notice requirements set forth in Penal Code § 1546.2(a) will result in tampering or destruction of evidence and jeopardize an investigation. Accordingly, pursuant to Penal Code § 1546.2(b)(1), it is hereby ordered that **neither the law enforcement officer(s) who execute this warrant nor the providers receiving the warrant shall give such notification** until one of the following circumstances exist: (1) there is sufficient reason to believe that the threat cited above will not occur, or (2) the passage of 90 days from the date the warrant was executed. This delay of notice may be extended by seeking additional orders.

**Declaration:** I declare under penalty of perjury that the information within my personal knowledge contained in this affidavit, including all incorporated documents, is true.

11/24/2025
Date

[signature]
Affiant
Special Agent Hiram Duncan



11/24/25 [initials]

***Exhibit 1A – Place(s) to be searched:***

**THE INTERNET SERVICE PROVIDER known as Google LLC**
Attn: Google Legal/Investigations Support
1600 Amphitheatre Parkway
Mountain View, CA. 94043
Phone: (844) 383-8524
Email: uslawenforcement@google.com
Service via digital upload: Law Enforcement Request System (LERS)

**THE INTERNET SERVICE PROVIDER known as: Yahoo Inc.**
Attn: Custodian of Records
391 San Antonio Rd (Floors 5 & 6)
Mountain View, CA 94040
Service via electronic upload: https://app.kodexglobal.com/yahoo-inc/signup



11/24/25 [handwritten initials]

***Exhibit 1B – Property to be Seized:***

**Google LLC**
FOR THE FOLLOWING RECORDS:
Records from the above listed Service Provider for the Email Address: **Mendonesa8@gmail.com,**
In compliance with California Electronic Communications Privacy Act referenced by California Penal Code § 1546.1(d)(1), each of the types of records specified below associated with the Google LLC account shall be for the period of **10/1/2020 to 10/27/2025**. The provided records shall be reviewed for evidence related to the crime(s) of: 182, 132, 118a, 530.5(a) of the California Penal Code to wit: Conspiracy , Presenting forged evidence in legal trials or proceedings, Swearing false statements in affidavits to mislead legal proceedings, Using another's personal information for unlawful purposes.

**Contacts:** Contacts stored by the Target Account including name, contact phone numbers, e-mails, social network links, and images.
**Google One records:** Records of the Target Accounts use of Google One services to include which Google One products are utilized by the Target, subscription level and payment information, stored files and their connected sources, stored device backups, account identifiers of users that the Target Account's Google One storage is shared with, and records of the Target Accounts use of the Google One Virtual Private Network (VPN) to include dates and times of VPN activation, utilized IP addresses, and recorded activity.
**Google files:** Records of the Target Accounts use of the Google Files app to include the names of files deleted using the Google Files app, if available, and information about files that were synced to Google drive or shared via the app.
**Google Keep:** Google Keep records to include the content of Keep notes, embedded media, and stored files.
**Linked accounts:** Records of all linked external accounts or associated email address, username, or contact information connected to the Target Account including but not limited to recovery email addresses.
**Subscriber information:** Basic registration or customer information to include name, address, phone number, contact information, additional accounts, and dates associated with account creation and/or suspension for the above listed Target Account.
**Gmail records:** Google Gmail records related to the Target Account to include subscriber registration information; sign-in IP addresses and associated time stamps; email header information; and all Google LLC stored electronic communications including saved, deleted, sent, stored, & draft email; stored notes; stored chats and chat logs; account histories; attached files to include digital images, videos, documents, links, and any other files associated with the Target Account.
**Google Messages:** Records of stored Google Messages both synced from Google devices used by the Target account or via Google Message for Web for the dates indicated. Such records shall include dates and times of messages, message sender and recipient identifiers, and message content with attachments.
**Google Voice records:** Stored communications such as Call, Text, and Data detail records associated with the identified Target Account for the above listed dates and times. These records shall also include all text message or chat content, voicemails and transcriptions, any other stored communications, and any shared files both sent or received. These records shall include stored audio recordings of Google Voice calls, if available.
**IP address logs:** Information related to IP addresses used for the creation of the Target Account as well as IP addresses used to access to Google LLC apps and services or where the user took actions like uploading files or sending messages. Such records should include the dates and times of such events.
**Google Calendar events:** Stored calendar data for the Target Account to include shared calendars and records showing what account the calendar was shared with.
**Google Docs files:** Stored Google Docs records to include Docs, Sheets, Slides, and Forms to include records of collaboration and sharing that show who these file(s) were shared with or accessed by and shall include archived copies of Docs, Sheets, Slides, and Forms.
**Google Drive:** Stored files in Google Drive stored by or accessible to the Target Account to include the files EXIF or metadata and records that indicate if a file was shared or accessed by anyone other than the listed Target Account with their associated account identifiers.
**Google Forms:** Records of the Target Accounts use of Google Forms to include forms and surveys that the



11/24/25 [handwritten initials]

target created, manages, or participated in with the associated form results.
**Google Photos:** Stored photo and video files to include associated metadata & geo-location data and associated album name, photo image tags provided by the Target Account, tagged photos and the identities of persons tagged in the Target Account's photos if associated with a Google account.
**Web and app activity (Including Search):** Stored search and internet history activity on apps and browsers from Search, Maps, Now, and other Google products. These records shall also include records collected by the Target Account's use of the Google Toolbar if installed and while the Target Account was signed in.
**Google Gemini:** All prompt history, prompt responses, and documents, videos, or files generated using Google Gemini including timestamps, metadata, and logs regarding user activity.

**Yahoo!**
FOR THE FOLLOWING RECORDS:
Records from the above listed Service Provider for the Email Address: **akaswaki@yahoo.com, mcruz_tx_usa@yahoo.com**
Each of the types of records specified below shall be for the period of **10/1/2020 to 10/27/2025**. for evidence related to the crime(s) of: 182, 132, 118a, 530.5(a) of the California Penal Code to wit: Conspiracy , Presenting forged evidence in legal trials or proceedings, Swearing false statements in affidavits to mislead legal proceedings, Using another's personal information for unlawful purposes.

**Subscriber information:** Subscriber information to include name, address, phone number, contact information, additional accounts, and dates associated with account creation and/or suspension for the above listed Target Account.
**Stored Communication:** Stored electronic communications including saved, deleted, sent, stored, & draft email; account histories; digital images, buddy lists, method of payment, detailed billing information, and any other files associated with User and/or User account(s).



11/24/25 [handwritten initials]

FILED
Superior Court of California
County of Alameda
09/09/2025
Chad Finke, Executive Officer/Clerk of the Court
By: [signature] Deputy
D. Fisher

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

RENÉ C. DAVIDSON COURTHOUSE

| | |
|---|---|
| Ariel Mendones, et al.,<br>Plaintiff, et al.,<br>v.<br>Cushman and Wakefield, Inc., et al.,<br>Defendant, et al. | No.: 23CV028772<br>**Order re Terminating Sanctions** |

The order to show cause why terminating sanctions should not issue against Plaintiffs Ariel and Maridol Mendones for intentionally submitting false testimony to the Court in connection with their motion for summary judgment and Plaintiffs not referred to the Alameda County District Attorney's Office for criminal prosecution came on for hearing on September 9, 2025, at 2:30 p.m. The Court issued a tentative ruling, which Plaintiffs contested. Plaintiffs did not appear at the hearing and were not excused from appearing. Defendants' counsel appeared. As the contesting party was not present, the Court affirms its tentative ruling and issues a terminating sanction against Plaintiffs for intentionally submitting false evidence to the Court in connection with their motion for summary judgment.

## I. BACKGROUND

On March 11, 2025, Plaintiffs moved for summary judgment in this action. In support, Plaintiffs provided several documents as exhibits. Upon review, the Court suspected Plaintiffs' exhibits 3, 6A, 6B, 6C, 7, 21, 27, 35, and 40 of having been altered or created by generative artificial intelligence (GenAI). For instance, exhibits 6A, 6C, and 36 purport to capture the speech and image of Geri Haas. But, while exhibit 36 appears to capture a real-life interaction, certain characteristics of exhibits 6A and 6C, such as the lack of facial expressions, the looping video feed, among other things, suggested that these exhibits were products of GenAI—i.e., "deepfakes."

On June 11, 2025, the Court issued a tentative ruling in connection with a case management conference, indicating its intent to issue an order to show cause with a hearing on July 8, 2025. At the hearing on June 12, 2025, the Court's suspicion was reinforced when Maridol Mendones mentioned that some witnesses depicted in the suspect evidentiary submissions were deceased or could not be contacted by her. Maridol Mendones asked for the Court to set the hearing on the order to show cause in August 2025 to accommodate her and permit her time to seek legal counsel.

On July 11, 2025, the Court issued the order to show cause why terminating sanctions should not issue against Plaintiffs for intentionally submitting false testimony to the Court in connection with their motion for summary judgment and Plaintiffs not referred to the Alameda County District Attorney's Office for criminal prosecution. The Court restates the relevant portions of that order:

> The Court issues an order to show cause why terminating sanctions should not issue against Plaintiffs for intentionally submitting false testimony to the Court in connection with their motion for summary judgment and Plaintiffs not referred to the Alameda County District Attorney's Office for criminal prosecution.
>
> The Court notes that some of the purported testimony submitted by Plaintiffs appears to be products of generative artificial intelligence. (*Compare* Pls.' Mot. Summ. J. Ex. 36 (capturing speech and image of Geri Haas), *with* Exs. 6A & 6C (purporting to capture speech and image Geri Haas); *see also* Exs. 3, 6B, 6C, 7, 21, 27, 35, 40.) The Court is also suspicious of the authenticity of other evidentiary submissions.

The Court is attentive to the issue of improper use of generative AI before it. (*See, e.g., Evans v. Execushield, Inc.* (Cal. Super. Ct. Mar. 10, 2025) 2025 WL 893084 (discussing the presentation of fake citations to the court by attorneys).) The Court is also attentive to the use of generative AI to create videos. (*See, e.g.*, Jess Weatherbed, Judge berates AI entrepreneur for using a generated 'lawyer' in court, The Verge, Apr. 10, 2025, https://www.theverge.com/news/646372/ai-lawyer-artificial-avatar-new-york-court-case-video.)

The Court further notes that California law provides that a person who "willfully and contrary to the oath, states as true any material matter which he or she knows to be false . . . is guilty of perjury." (Cal. Pen. Code § 118(a).)

The Court directs Plaintiffs to submit a declaration, under penalty of perjury, answering the following questions, concisely and directly:

1. Were any of Plaintiffs' evidentiary submissions created using generative artificial intelligence?

2. Were any of Plaintiffs' evidentiary photographic submissions edited in any way? (See, e.g., Ex. 7.)

3. What is the messaging platform capturing the purported messages depicted in exhibits 35 and 40?

Plaintiffs must provide all the metadata of the purported audio and video testimonials for "Salinas" (Ex. 3), Barbara Clark (Ex. 6D), Juliann Smith (Ex. 27), Geri Haas (Exs. 6A & 6C), Sarah Davis (Ex. 6B), and an unidentified person (Ex. 21). Please include the file format, date created, date modified, file type, identity of device capturing video, lens used, shutter speed, file type, and the like. Please also identify the operator of the camera that captured the purported video testimonials noted above.

Plaintiffs must also provide the metadata and certificates for the electronic signatures of the declarations of Barbara Clark, Juliann Smith, Debra Daniels, Caroline Scott, Geri Haas, and Sarah Davis.

The Court may also order the in-person appearance of "Salinas," Barbara Clark, Juliann Smith, Geri Has, Sarah Davis, the unidentified person in exhibit 21, Cristy Moore, Jane Johnson, Rose Torres, Allen Whistley, and any other person identified in the suspect evidentiary submissions.

The Court sets a hearing for August 12, 2025, at 2:30 p.m. on the order to show cause.

All parties must appear in-person at this hearing.

The Court orders both Ariel Mendones and Maridol Mendones to separately submit a declaration stating under penalty of perjury addressing the three questions, noted above. The requested metadata and certificates for each of the purported audio and video testimonials, and the filed declarations, must be attached as exhibits to the declaration.

The declarations must be limited to 5 pages, excluding the caption page and the requested metadata and certificates.

> The declarations must be filed and served no later than July 29, 2025.
>
> The Court will deem any failure to file a declaration addressing each of these issues as conceding that their evidentiary submissions were created using generative AI or were altered to depict something that did not actually happen.

(OSC re Terminating Sanctions, July 11, 2025.)

On July 29, 2025, Plaintiffs filed their declarations. (*See* Pls.' Decls., July 29, 2025.)

## II. LEGAL STANDARD

"By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an . . . unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met:

> (1) "The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.
>
> (2) "The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (3) "The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief."

(Cal. Civ. Proc. Code § 128.7(b).)

"If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." (§ 128.7(c).) "In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence." (*Id.*) "A sanction imposed for violation of

subdivision (b) shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated." (§ 128.7(d).)

## III. DISCUSSION

The Court finds that Plaintiffs violated section 128.7(b) of the Code of Civil Procedure by submitting fabricated evidence in support of their motion for summary judgment.

### A. Fabricated Evidentiary Submissions

The Court examined exhibits 3, 6A, 6B, 6C, 7, 21, 27, 35, and 40, reviewed Plaintiffs' declarations, and reviewed the attached metadata.

As the trier of fact on the order to show cause, the Court weighed the evidence and made credibility findings.

#### 1. Exhibits 6A and 6C

The Court finds that exhibits 6A and 6C are products of GenAI and do not capture the actual speech and image of Geri Haas. In other words, these exhibits are deepfakes. Here is a screenshot of exhibit 6A:



The full video is available at https://drive.google.com/file/d/1xI3xCC6Xdq94PZvz7QCl6M_XDsg8q55k/view. The Court has downloaded a copy of exhibit 6A to preserve the evidence.

Here is a screenshot of exhibit 6C:




The full video is available at https://drive.google.com/file/d/1h1ae0izs07kGdF3HKALRvla-cgB1E1gF/view. The Court has downloaded a copy of exhibit 6C to preserve the evidence.

Here is a screenshot of exhibit 36:



The full video is available at https://drive.google.com/file/d/1jSMc69QkWemY0OXkl6hV2PRCnLtQtFp6/view. The Court has downloaded a copy of exhibit 36 to preserve the evidence.

While the "person" depicted in exhibits 6A and 6C bears a passing resemblance to the person depicted in exhibit 36, they are not the same person. The accent, cadence,

volume, word choice, pauses, gestures, and facial expression, among other characteristics, of the person depicted in exhibit 36 are vastly different from those demonstrated by the "persons" depicted in exhibits 6A and 6C. The "persons" depicted in exhibits 6A and 6C lack expressiveness, are monotone, do not pause at moments where pauses are expected, use odd words choices, and appear generally robotic. Further, the mouth flap does not match the words being spoken. Juxtaposing these three videos together, it becomes clear that whoever the "persons" depicted in exhibits 6A and 6C are, they are not the person depicted in exhibit 36.

The oddities of exhibits 6A and 6C are typical features of videos created by GenAI.

**2. Exhibit 7**

The Court finds that exhibit 7 was materially altered. Here is a screenshot of exhibit 7, page 2:



Here is a screenshot of exhibit 7, page 3:




///

///

///

///

///

///

///

///

///

///

///

Here is a screenshot of exhibit 7, page 5:




The lighting, contrast, color, and sharpness of the man depicted in these pictures compared with the lighting, contrast, color, and sharpness of the background shows that the man was stitched into the photograph taken by the Ring camera. A close inspection shows that the background is in black and white, while the man is in color.

///

///

///

///

///

///

///

Compare these photographs with the photographs on pages 7 and 8, which are from the same Ring camera, according to Plaintiffs:







Juxtaposing the photographs on pages 7 and 8 against the photographs on pages 2, 3, and 5 makes it clear that the photographs on pages 2, 3, and 5 were materially altered.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**3. Exhibits 35 and 40**

The Court finds that exhibits 35 and 40 are products of GenAI—or, at least, were materially altered. Here is a screenshot of exhibit 35:




/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Here are screenshots of exhibit 40:









In their declaration, Plaintiffs stated that the messaging platform in exhibit 35 is Instagram and exhibit 40 is a Zoom iPhone group chat. These statements strain credulity: Looking at the menu bar on the lower part of the images, it is clear to this Court that exhibits 35 and 40 seem to depict the same messaging platform. Further, the font style, spacing, and sizing appear off on exhibit 40, suggesting the names and messages were altered.

**4. Metadata**

The Court did not find the metadata submitted by Plaintiffs reliable or credible. For instance, the information contained above the "General" field of the MacOS Inspector on pages 11, 16, 17, 18, 19, 24, 27, 28, 29, 30, 31, 32, 33, 48, 49, 51, 52, 59, 60, and 61, contains information not typically noted in metadata, such as "Copyright [entity]. All rights reserved." Other portions of the metadata included URLs to Google Maps, phone numbers, GPS coordinates, mailing addresses, and other atypical information within the "musical genre" field. (*See id.* at pp. 12–15, 37, 42–47.) The Court suspects that material metadata was added at some later point in time by someone with access to the files and with editing privileges.

**5. Plaintiffs' Explanations**

The Court did not find Plaintiffs' explanations in their respective declarations to be credible. Notably, in response to the first question, Maridol Mendones declared that artificial intelligence was used in all videos marked as exhibits 6A to 6D. (Pls.' Decls. at 3:23–26.) Maridol Mendones sought to shift the blame to Geri Haas for providing her with this video testimonial. (*See id.* at 3:13–4:3.) Her explanation, however, is not credible: Assuming the veracity of the metadata, exhibit 6A was captured on an Apple iPhone 6 Plus using its rear camera and running iOS 12.5.5. (*See id.* at p. 16.) Here's the problem for Maridol Mendones: Apple did not introduce Apple Intelligence until iOS18 and required an iPhone 16, iPhone 15 Pro, or iPhone 15 Pro Max. (*See* Apple Inc., *Apple*

*Intelligence*, https://www.apple.com/apple-intelligence/ (last visited September. 5, 2025.) ("Apple Intelligence is available in beta on all iPhone 16 models, iPhone 15 Pro, iPhone 15 Pro Max, iPad mini (A17 Pro), and iPad and Mac models with M1 and later, with Siri and device language set to the same supported language, as part of an iOS 18, iPadOS 18, and macOS Sequoia software update.").) As such, Maridol Mendones explanation about why the person depicted in exhibit 6A is robotic is unbelievable.

**6. Lingering Suspicions**

The Court remains suspicious of the other evidentiary submissions, but it does not have the time, funding, or technical expertise to determine the authenticity of Plaintiffs' statements or conduct a forensic analysis of the suspect evidentiary submissions.

| Exhibit | Plaintiffs' Description | Plaintiffs' Link |
|---|---|---|
| 3 | "Voicemail messages of Defendant-Salinas dated December 27 to 29, 2022. Third parties mocking voicemail messages." | https://drive.google.com/file/d/1fqjOfTxKbJmG_7LodDKkFWB-KpxgTWGz/view?usp=sharing |
| 6B | "Corroborated video testimony of Sarah Davis secondary to Geri Haas' declaration dated January 13, 2023." | https://drive.google.com/file/d/1mnASOgTl7sIrg-OLVKMI95Elyz_ySqOa/view?usp=sharing |
| 21 | "Voicemail message of Defendant-Salinas dated December 29, 2022, stating that they will waive their false | https://drive.google.com/file/d/1Vmm9HxQwJ521rDWBPWTXy0Og_N7yMgne/view?usp=sharing |

| | | |
|---|---|---|
| | allegations if the video footage will be sent to them via email." | |
| 27 | "Dr. Juliann Smith's testimonies with two corroborating witnesses dated July 30, 2024 at 2:35 p.m." | https://drive.google.com/file/d/12xnrtMiTyP_B5abHeZM2ycYwg9MaDAcd/view?usp=sharing |

The Court has downloaded copies of these exhibits to preserve the evidence.

## B. Appropriate Sanction

The Court next turns to the appropriate sanction. In determining the appropriate sanction, the Court is guided by section 128.7(d)'s guidance that "[a] sanction imposed for violation of subdivision (b) shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated." (§ 128.7(d).)

### 1. Monetary Sanctions

The Court finds that monetary sanctions are not appropriate.

The Court is attentive to the issue of improper use of GenAI before it. (*See, e.g., Evans v. Execushield, Inc.* (Cal. Super. Ct. Mar. 10, 2025) 2025 WL 893084 (discussing the presentation of fake citations to the court by attorneys).) The misuse of GenAI in legal proceedings most frequently happens in the context of presenting fictitious citations. (*See U.S. v. Hayes* (E.D. Cal. 2025) 763 F. Supp. 3d 1054.) In that context, appropriate sanctions include (1) penalties payable to the court in the range of $1,000.00 to $5,000.00, (2) sending a copy of the order to the client, (3) sending a copy of the order to each judge falsely identified as the author of a fake opinion, (4) sending a copy of the order to all the district judges and magistrate judges in the district, and (5) sending a copy of the order to the relevant bar association. (*Id.* at 1073; *see also Mata v. Avianca, Inc.* (S.D.N.Y. 2023) 678 F. Supp. 3d 443, 466 (imposing similar sanctions); *Gjovik v. Apple Inc.* (N.D. Cal., May

19, 2025, No. 23-CV-04597-EMC) 2025 WL 1447380, at *7 ("At this juncture, the Court shall not impose any sanctions. However, it forewarns Ms. Gjovik that (1) she is responsible for verifying the accuracy of AI-generated or AI-provided information, including but not limited to case citations and content, **and** that (2) failure to do so may lead to sanctions, including but not limited to a finding of contempt and/or the ability to proceed pro se.").)

The reasons for imposing these sanctions were captured by the *Hayes* court: "Submitting fictitious cases and quotations to the court 'degrades or impugns the integrity of the Court' and 'interferes with the administration of justice' in violation of Local Rule 180(e), and violates California Rules of Professional Conduct 3.1(a)(2), 3.3(a)(1), and 3.3(a)(2)." (*See also Hayes*, 763 F. Supp. 3d at 1064.)

Here, the use of GenAI went beyond the submission of fictitious citations. Plaintiffs submitted at least two exhibits created by GenAI. Further, to an even greater extent than expressed by the *Hayes* court, the use of deepfakes in a case significantly undermines the Court's ability to administer justice, significantly erodes the public's confidence in the judicial system, and significantly burdens under-resourced and overworked courts with the time-consuming task of assessing whether evidence presented to it during pretrial proceedings was a deepfake. As such, a more severe sanction is appropriate.

**2. Non-monetary Sanctions**

**i. Referral to District Attorney for Prosecution**

➔ The Court finds that referral for criminal prosecution is not appropriate.

Plaintiffs' submission of fabricated evidence brings to the Court's mind two Penal Code statutes. The first statute concerns perjury:

> Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by

> law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury.

(Cal. Pen. Code § 118(a).) "Perjury is punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three or four years." (§ 126.)

The second statute concerns forgery:

> Every person who, with the intent to defraud, knowing that he or she has no authority to do so, signs the name of another person or of a fictitious person to any of the items listed in subdivision (d) is guilty of forgery.

(§ 470(a).) "Forgery is punishable by imprisonment in a county jail for not more than one year, or by imprisonment pursuant to subdivision (h) of Section 1170." (§ 473(a).)

The Court finds that a sanction referring Plaintiffs for criminal prosecution is simultaneously too severe and not sufficiently remedial. The sanction is too severe as even being the subject of a criminal investigation may lead to social repercussions that persist after the criminal proceedings close. This civil judicial officer does not have the expertise and experience to balance all relevant considerations to determine whether a matter should be referred to the District Attorney for a criminal investigation. At the same time, a referral would do little to address the harm that Plaintiffs have caused in this civil proceeding.

**ii. Evidence or Issue Sanctions**

The Court finds that evidence or issue sanctions are not appropriate. This sanction would not serve an adequate deterrent against future uses. As illustrated above, examining whether evidentiary submissions were created using GenAI is labor intensive, and courts (really, the public at large) are not adequately prepared to discern whether a person depicted in a video was created using GenAI. (*See, e.g.*, Shannon Bond, *AI-generated images are everywhere. Here's how to spot them*, NPR (June 13, 2023), https://www.npr.org/2023/06/07/1180768459/how-to-identify-ai-generated-deepfake-images.) While an evidentiary or issue sanction would exclude some things that can be

shown to be created by GenAI, others might sneak through the Court's or opposing party's analysis. Without robust safeguards to guard against future misuses of the legal proceedings, an evidentiary or issue sanction is effectively toothless.

**iii. Terminating Sanction**

The Court finds that a terminating sanction is appropriate. This sanction is proportional to the harm that Plaintiffs' misuse of the Court's processes has caused. A terminating sanction serves the appropriate remedial effect of denying Plaintiffs— and other litigants seeking to make use of GenAI to submit video testimonials—of the ability to further prosecute this action after violating the Court's and the Defendants' trust so egregiously. (*See R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal. App. 4th 486, 497 (The Civil Discovery Act "authorizes terminating sanctions in the first instance in egregious cases.").)

Further, a terminating sanction serves the appropriate deterrent effect of showing the public that the Court has zero tolerance with attempting to pass deepfakes as evidence.

This sanction serves the appropriately chilling message to litigants appearing before this Court: Use GenAI in court with great caution.

As the Court cannot disentangle the extent to which Ariel Mendones was active or complicit in Maridol Mendones's actions in connection with the violation of section 128.7(b) of the Code of Civil Procedure, the Court finds that both parties must be sanctions equally.

///

///

///

///

///

///

## IV. ORDERS

The Court strikes the second amended complaint from the register of actions. The entire action is dismissed with prejudice.

Dated: 9/9/2025

Victoria Kolakowski
Judge of the Superior Court
**Victoria Kolakowski / Judge**